IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GLORIA COLLINS,                        *
                                       *
         Plaintiff,                    *
                                       *
     v.                                *
                                       *       CV 123-092
DENIS MCDONOUGH, Secretary of          *
Veterans Affairs,                      *
                                       *
         Defendant.                    *
                                       *

---

**O R D E R**

---

Before the Court is Defendant's motion to dismiss. (Doc. 8.)[1]

For the following reasons, Defendant's motion is **GRANTED IN PART**

**AND DENIED IN PART.**

## I. BACKGROUND

Plaintiff is a former employee of the Department of Veterans

Affairs ("VA") at the Charlie Norwood VA Medical Center in Augusta,

Georgia. (Doc. 6, ¶¶ 3-4.) Plaintiff brought this action pursuant

to Title VII of the Civil Rights Act of 1964 ("Title VII"), the

Civil Service Reform Act ("CSRA"), and the Rehabilitation Act to

remedy acts of employment discrimination, harassment, and

retaliation perpetrated against her by the VA. (Id. ¶ 1.)

---

[1] Plaintiff also filed a motion for oral argument on Defendant's motion to dismiss. (Doc. 20.) Because the motions were thoroughly briefed, the Court finds no need to conduct a hearing on the matter. As such, Plaintiffs' motion for hearing (Doc. 20) is **DENIED.**

Plaintiff was sexually assaulted by a fellow employee at the VA. (Id. ¶ 8.)  After the incident, the offending employee proceeded to stalk her on her Facebook account.  (Id. ¶ 10.)  Plaintiff reported the incident of sexual assault to her lead the next day, asked for guidance on what to do, and requested to not work with or otherwise interact with the offending employee.  (Id. ¶ 9.) Plaintiff's lead assured her the matter would be handled.  (Id.) After raising the issue to multiple supervisors and repeatedly requesting action, Plaintiff was reassigned to a different shift and location than the offending employee and signed a no-contact order.  (Id. ¶ 10.)  However, the offending employee was later allowed to change to the same location and shift as Plaintiff. (Id.)  Plaintiff continued to work with her supervisors to address the matter, but after reporting the incident of sexual assault, she suffered ongoing reprisal and retaliation, including being forced to change workstations and shifts, having to leave work through alternate means, and being denied leave and other benefits. (Id. ¶¶ 11, 27.)

Plaintiff reported her sexual assault and ongoing lack of support and safety she received from management to the VA's Equal Employment Opportunity ("EEO") office.  (Id. ¶ 12.)  Though the EEO office assigned a counselor and investigated Plaintiff's claim, Plaintiff alleges the EEO office never advised her in writing of her rights and responsibilities.  (Id.)  Plaintiff was

interviewed about the sexual assault, harassment, management failure, and other issues on at least four occasions, including by VA police, VA investigators, EEO counselors, and others, both before and after her employment ended. (Id. ¶ 17.)

Plaintiff's conditions of employment degenerated enough that she was forced to leave, and at the time of constructive discharge she communicated via email to her EEO counselor to update her EEO claim to include constructive discharge. (Id. ¶¶ 13-14.) While Plaintiff continued to communicate with the EEO office, Plaintiff received no communication directly from the EEO office regarding her claim after she left the VA. (Id. ¶¶ 16, 18.) Because the EEO counselor informed Plaintiff she would file a formal complaint on Plaintiff's behalf when the investigation was completed, Plaintiff filed a Freedom of Information Act ("FOIA") request and contacted an elected representative to receive updates on her claim. (Id. ¶ 19.) Plaintiff received word through the elected representative that the VA's investigation corroborated her alleged mistreatment, but Plaintiff never received any word from the EEO office about her claim. (Id. ¶¶ 20-21.)

On July 7, 2023, Plaintiff filed her initial complaint. (Doc. 1.) On October 19, 2023, she filed an amended complaint (the "Complaint"), which asserts five claims: (1) gender discrimination in violation of Title VII; (2) hostile work environment in violation of Title VII; (3) reprisal for engaging in protected

activities; (4) constructive discharge; and (5) violation of the
Rehabilitation Act.   (Doc. 6, ¶¶ 22-30.)   On November 22, 2023,
Defendant filed a motion to dismiss.   (Doc. 8.)

## II. LEGAL STANDARDS

Defendant moves to dismiss both for lack of subject-matter
jurisdiction due to Plaintiff's alleged failure to exhaust under
Federal Rule of Civil Procedure 12(b)(1) and failure to state a
claim under 12(b)(6).   (Doc. 8, at 1, 7-22.)   The Court sets out
the applicable legal standards under both rules below.

### A. Rule 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), attacks on
subject-matter jurisdiction may be facial or factual.   Carmichael
v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th
Cir. 2009) (citation omitted).   For facial attacks, the Court
accepts the complaint's allegations as true.   Stalley ex rel. U.S.
v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232-33
(11th Cir. 2008) (citation omitted).   Factual attacks, in contrast,
allow a court to "consider extrinsic evidence such as deposition
testimony and affidavits."   Carmichael, 572 F.3d at 1279 (citation
omitted).   Factual attacks place the burden on the plaintiff to
show jurisdiction exists.   OSI, Inc. v. United States, 285 F.3d
947, 951 (11th Cir. 2002) (citing Tomson v. Gaskill, 315 U.S. 442,
446 (1942); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511

(5th Cir. 1980)).[2] To determine whether Plaintiff met her burden, "it is proper for a judge . . . to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008) (footnotes and citations omitted). Rule 12(b)(1) motions for failure to exhaust are "factual attacks" based on evidentiary matters outside of the pleadings. See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007) (discussing distinction between "facial" and "factual" attacks on subject-matter jurisdiction).

**B. Rule 12(b)(6)**

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual

---

[2] In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

When a motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim is pending, the preferred approach is to decide the jurisdictional issue first and then decide whether a claim was stated. Jones v. Georgia, 725 F.2d

622, 623 (11th Cir. 1984) (citation omitted).   In this Circuit,
failure to exhaust can affect the Court's jurisdiction.   <u>Crawford</u>
<u>v. Babbitt</u>, 186 F.3d 1322, 1326 (11th Cir. 1999) (citing <u>Brown v.</u>
<u>Gen. Servs. Admin.</u>, 425 U.S. 820, 832-33 (1976)).   Thus, the Court
first turns to Defendant's arguments concerning exhaustion and
then addresses the remaining arguments.

## A. Exhaustion and Timeliness

Defendant moves to dismiss under Rule 12(b)(1) for two
reasons: (1) Plaintiff failed to raise her claims through an EEO
complaint, and (2) Plaintiff failed to bring her claims within the
45-day time period provided by law.   (Doc. 8, at 7-13.)   Plaintiff
contends she properly and timely exhausted her claims.   (Doc. 11,
at 7-9.)   She further argues any failure to bring her claims within
the required 45-day period should be subject to equitable tolling
because there is no record the EEO counselor advised Plaintiff in
writing of her rights and responsibilities at their initial
meeting, and the EEO counselor advised her to "hold off" filing a
formal claim.   (<u>Id.</u>)

While both of Defendant's arguments are based on failure to
exhaust, because one is a jurisdictional prerequisite and the other
is a condition precedent, they are subject to different standards
of review and the evidence the Court can consider differs.   <u>Gregg</u>
<u>v. McDonough</u>, CV422-114, 2023 WL 2825332, at *6 (S.D. Ga. Feb. 9,
2023), *report and recommendation adopted*, 2023 WL 2730665 (S.D.

Ga. Mar. 31, 2023) ("The distinction between conditions precedent and jurisdictional prerequisites is vital to determining which party bears the burden of proving exhaustion . . . .")  In the Eleventh Circuit, administrative exhaustion is a jurisdictional prerequisite to Title VII and Rehabilitation Act actions. Crawford, 186 F.3d at 1326; Gaillard v. Shinseki, 349 F. App'x 391, 392 (11th Cir. 2009) ("A plaintiff asserting a private right of action under the Rehabilitation Act must satisfy the exhaustion of administrative remedies requirement in the manner prescribed by Title VII . . . ." (citations omitted)).  Eleventh Circuit courts have subject-matter jurisdiction over these claims only if the plaintiff "pursue[d] and exhaust[ed] her administrative remedies," that is, "made a good faith effort to comply with the [EEO] regulations and, particularly, to provide all the relevant, specific information available to him or her." Crawford, 186 F.3d at 1326 (citation omitted); Wade v. Sec'y of Army, 796 F.2d 1369, 1376 (11th Cir. 1986).  Where an agency, such as the VA, requests information relevant to resolving the employee's complaint and the employee fails to provide it, the employee has failed to exhaust her administrative remedies.  See Johnson v. Bergland, 614 F.2d 415, 418 (5th Cir. 1980) (concluding plaintiff failed to exhaust his administrative remedies where his "responses to the agency request for information were insufficient to enable the agency to determine what complaint of discrimination was made and when it

8

had occurred"). Since Defendant's first argument challenges the Court's subject-matter jurisdiction, the Court analyzes, under Rule 12(b)(1), whether Plaintiff made a good faith effort to raise each of her claims to the EEO office and provided all relevant, specific information available. See Crawford, 186 F.3d at 1326 (citation omitted).

Timely contact with an EEO counselor is not a jurisdictional prerequisite. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Rather, timely filing is a condition precedent to a Title VII action. See, e.g., Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1000-10 (11th Cir. 1982) (holding that all conditions precedent to a Title VII action are not jurisdictional prerequisites); Myers v. Cent. Fla. Invs., Inc., 592 F.3d 1201, 1223-24 (11th Cir. 2010). For a motion to dismiss, failure to meet a filing deadline constitutes failure to state a claim under Rule 12(b)(6). See Oaxaca v. Roscoe, 641 F.2d 386, 391 (5th Cir. 1981); see also Felter v. Norton, 412 F. Supp. 2d 118, 122 (D.D.C. 2006) ("Ordinarily, a party's motion under Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction cannot rest upon an assertion that an action is barred by the statute of limitations

because the expiration of the limitations period is an affirmative defense and not a bar to jurisdiction." (citations omitted)). Accordingly, the Court first analyzes whether Plaintiff properly raised her claims to the EEO office under the Rule 12(b)(1) standard and then addresses whether Plaintiff timely filed her claims with the EEO office under the Rule 12(b)(6) standard.

### 1. Claims Before the EEO Office

To exhaust her administrative remedies, a federal employee must first seek relief with the federal agency that allegedly discriminated against her. Brown v. Snow, 440 F.3d 1259, 1262 (11th Cir. 2006), *overruled on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006), (citing 29 C.F.R. § 1614.106(a)). The purpose of this requirement "is to give the agency the information it needs to investigate and resolve the dispute between the employee and the employer." Id. at 1263 (citations omitted). As stated above, to determine whether an employee exhausted her administrative remedies, the Court considers whether she "made a good faith effort to comply with the regulations" to present and pursue her claim through the EEO office. Id. (citation omitted). Because exhaustion of claims before an agency has been considered a jurisdictional requirement, the Court "may consider extrinsic evidence such as deposition testimony and affidavits" without converting the motion to dismiss

to a motion for summary judgment. Carmichael, 572 F.3d at 1279 (citation omitted).

Defendant contends there is no evidence Plaintiff reported her claims to the EEO office before initiating this lawsuit. (Doc. 8, at 8 n.1, 12-13.) "[T]he Court must approach each claim and its exhaustion separately rather than determining if Plaintiff has globally exhausted all claims, because subject matter jurisdiction must be established claim by claim, not based on the action as a whole." Gregg, 2023 WL 2825332, at *2 (citing United States ex rel. Boothe v. Sun Healthcare Grp., Inc., 496 F.3d 1169, 1176 (10th Cir. 2007)).

Preliminarily, before analyzing whether each claim was presented to the EEO office, the Parties dispute whether Plaintiff ever filed an EEO complaint. (Doc. 8, at 2-3, 7, 11; Doc. 11, at 6-9.) Defendant contends "Plaintiff never complied with the processes for filing an EEO complaint regarding the conduct alleged in the . . . [C]omplaint." (Doc. 8, at 7.) Defendant argues that while Plaintiff raised issues concerning her assault to an EEO counselor, she never formally initiated an EEO claim, and Plaintiff's meeting with an EEO counselor did not constitute filing a claim with the EEO office in compliance with applicable regulations. (Id. at 11.) Rather, according to Defendant, Plaintiff was referred to the EEO office by a supervisor and the EEO office initiated an interview and investigation on its own.

11

(<u>Id.</u> at 11-12.)   Plaintiff contends she did not understand the difference between initiating an internal investigation and filing a formal complaint when she met with the EEO counselor, and any confusion about whether she had initiated an EEO claim was compounded by the EEO office's instruction to wait to do more until after the investigation and the EEO office's failure to inform her in writing of her rights and responsibilities.   (Doc. 11, at 6-9.)   Plaintiff asserts she understood she initiated an EEO claim when she first met with the EEO counselor.   (Doc. 11-1, at 4.)

The Court finds Plaintiff made a good faith effort to initiate an EEO claim.   <u>Brown</u>, 440 F.3d at 1262.   Plaintiff believed she initiated an EEO claim when she first spoke with the EEO counselor and participated in the resulting investigation by providing interviews and documentation.   (Doc. 6, ¶ 12; Doc. 11-1, at 4.) Therefore, any claims raised in her interviews with the EEO office or subsequently brought to its attention by Plaintiff during the investigation were brought in good faith by Plaintiff and are exhausted.   <u>Brown</u>, 440 F.3d at 1262.   The Court now analyzes each of her five claims to determine whether she raised specific charges and provided information necessary to the investigation to the EEO office to exhaust her claims.   <u>Crawford</u>, 186 F.3d at 1326; <u>Wade</u>, 796 F.2d at 1376.

a. *Gender Discrimination*

First, the Court finds Plaintiff raised her gender discrimination claim with the EEO office. Plaintiff's gender discrimination claim is based on the alleged sexual assault she suffered at the hands of a co-worker and the managers who falsely assured her they could and would take action to resolve the situation on her behalf. (Doc. 6, ¶ 23.) Indeed, the EEO fact-finding inquiry summary states "[t]his investigation was convened to conduct an inquiry into allegations of inappropriate sexual contact." (Doc. 8-1, at 4.) Plaintiff's witness statement to the EEO office also includes detailed allegations of the sexual assault and how she reported the incident to "the lead," Mr. Alex Phillips. (Id. at 12-13.) Mr. Phillips's witness statement corroborates Plaintiff's statement. (Id. at 18.) Plaintiff also emailed screenshots to the EEO counselor over the course of the investigation in support of her allegations. (Id. at 49-54.) There is ample evidence in the record indicating Plaintiff raised these issues in her meeting with the EEO office and actively participated in the investigation. Thus, the Court finds her gender discrimination claim was administratively exhausted with the EEO. Crawford, 186 F.3d at 1326; Wade, 796 F.2d at 1376.

b. *Hostile Work Environment*

Second, the Court finds Plaintiff raised her hostile work environment claim to the EEO office. Plaintiff's hostile work

13

environment claim is based on all of Defendant's conduct alleged in her Complaint. (Doc. 6, ¶ 24.) The crux of her hostile work environment claim appears to be her continued lack of support from management and how the offending employee's continuing conduct made her feel unsafe at work. (Id. ¶¶ 10-12; Doc. 11-1, at 6.) Plaintiff alleges she informed the EEO office of these concerns. (Doc. 6, ¶ 12.) The EEO office's record indicates Plaintiff informed it she was continually scheduled with the offending employee, and she felt unsafe at work. (Doc. 8-1, at 5, 12-13.) In her witness statement, Plaintiff indicated "she want[ed] to be removed from the downtown campus because . . . [the offending employee] seem[ed] to be stalking her." (Id. at 13.) Based on the foregoing, the Court finds Plaintiff made a good faith effort to bring her hostile work environment claim to the EEO office, so this claim was administratively exhausted. Crawford, 186 F.3d at 1326; Wade, 796 F.2d at 1376.

c. *Reprisal*

Third, the Court finds Plaintiff did not effectively raise her reprisal claim with the EEO office. Plaintiff's reprisal claim is based on her being "treated more harshly and suffer[ing] adverse employment actions because she reported the employee who had assaulted her." (Doc. 6, ¶ 27.) Specifically, she points to being "forced to change work stations, shifts, . . . [and] to leave work through alternative means" and being "denied leave and other

benefits" after reporting the incident. (Id.)  There is no record of any reprisal claim in the EEO investigation documents.  (See Doc. 8-1.)  Indeed, Plaintiff's witness statement and her reports in the EEO investigation do not allege her mistreatment, particularly by her direct supervisor Ms. Debra Sanders, was ever because of or in retaliation for reporting the sexual assault or any other protected activity. (Id. at 12–13, 29–30.)  In a report that is part of the EEO investigation record, Plaintiff complains Ms. Sanders treated her poorly since first becoming Plaintiff's supervisor and states she does not know why. (Id. at 29–30 ("I am not sure what [Ms. Sanders's] issue is with me but it has been since the first day I started here. . . . She is always nice nasty to me and I am completely confused as to why . . . .").)  Plaintiff, however, states in the same report: "I informed of the clerk that rubbed his penis across my behind and the next thing I know I was working weekends alone with the gentleman." (Id. at 29.) Plaintiff also avers that at the first meeting with the EEO counselor, she explained what happened to her, including acts of harassment and retaliation. (Doc. 11-1, at 4.)  She further asserts she was interviewed by a board at the VA, which she believed was related to her EEO charges, and answered questions about how her claim started with the assault and proceeded to include harassment, FMLA leave abuse, and retaliation. (Id. at 6.)

It is Plaintiff's burden to show jurisdiction exists. <u>OSI, Inc.</u>, 285 F.3d at 951 (citations omitted). Because administrative exhaustion is jurisdictional, Plaintiff must show she exhausted her administrative remedies by in good faith bringing her claim to the EEO office and participating in the investigation. <u>Crawford</u>, 186 F.3d at 1326. Plaintiff's statements during the investigation do not indicate she exhausted her administrative remedies as to her reprisal claims because her "responses to the agency request for information were insufficient to enable the agency to determine what complaint of [reprisal] was made and when it had occurred." <u>Johnson</u>, 614 F.2d at 418. Plaintiff's statements in the EEO investigation do not show any claims of reprisal. Indeed, Plaintiff states she does not know why she is being mistreated by management and that it has always been this way with Ms. Sanders. (Doc. 8-1, at 29-30.) These statements go against finding a reprisal claim was raised. <u>See</u> <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80 (1998) (explaining Title VII does not operate as a "civility code for the American workplace"); <u>Succar v. Dade Cnty. Sch. Bd.</u>, 229 F.3d 1343, 1345 (11th Cir. 2000) ("Title VII prohibits discrimination; it is not a shield against harsh treatment at the work place. Personal animosity is not the equivalent of sex discrimination . . . . The plaintiff cannot turn a personal feud into a sex discrimination case . . . ." (alterations in original) (citation omitted)). The only remotely

16

adverse action Plaintiff referenced in the EEO investigation was "working weekends alone with the gentleman" who assaulted her after she reported him. (Doc. 8-1, at 30.) This action, however, is not listed in her Complaint and more bolsters her claim that she lacked support from management than that they retaliated against her. (See Doc. 6.) Plaintiff's conclusory allegations and averments that she informed the EEO office of general retaliation are also insufficient to show she provided specific information to the EEO office regarding reprisal. Johnson, 614 F.2d at 418. For these reasons, the Court finds Plaintiff did not exhaust her reprisal claim with the EEO office. Therefore, Defendant's motion to dismiss (Doc. 8) is **GRANTED** as to Plaintiff's reprisal claim.

> d. *Constructive Discharge*

Fourth, the Court finds Plaintiff raised her constructive discharge claim with the EEO office. Plaintiff alleges her "conditions of employment degenerated enough that she was forced to leave her employment" because of her complaints and in reaction to the "lack of action thereon by her managers and the EEO office." (Doc. 6, ¶¶ 13, 29.) Plaintiff alleges "at the time of her termination, [she] communicated via email to her EEO counselor to 'change [her] EEO claim to include constructive discharge,'" but she never received any response. (Id. ¶¶ 14-15.) There is no record of her filing a constructive discharge claim in the EEO investigation documents. (See Doc. 8-1.) In Plaintiff's

17

declaration, she avers that in July 2021, her EEO counselor informed her the investigation was wrapping up and she understood based on this communication that she had an ongoing EEO claim. (Doc. 11-1, at 6.)   That same month, Plaintiff asserts she sent her EEO counselor an email asking to amend her EEO claim to include constructive discharge.   (Id.)

The Court finds Plaintiff made a good faith effort to add her constructive discharge claim to what she believed was her ongoing EEO claim.   Crawford, 186 F.3d at 1326; Wade, 796 F.2d at 1376. The Court is not dissuaded from this finding by the lack of evidence in the EEO investigation record.   Plaintiff's constructive discharge claim arose after the investigation was initiated, and, as Plaintiff avers, the investigation was finishing up when she reported it.   (Doc. 11-1, at 5-6.)   Unlike Plaintiff's reprisal claim where there were multiple opportunities for Plaintiff to raise and provide details of her claim, Plaintiff was given no opportunity to provide specific details on her constructive discharge claim because the EEO counselor never responded to her communications regarding the claim and finished her report prior to adding the claim.   (Doc. 6, ¶¶ 14-15.)   For these reasons, the Court finds Plaintiff exhausted her constructive discharge claim.

        e. *Rehabilitation Act*

Finally, the Court finds Plaintiff raised her Rehabilitation Act claim with the EEO office.  Plaintiff alleges she "was denied reasonable requests for leave" in violation of the Rehabilitation Act.  (Doc. 6, ¶ 30.)  The EEO investigation report contains numerous references to Plaintiff's disputes with Ms. Sanders over her requests for leave.  (Doc. 8-1, at 6, 15-16, 18-19, 29, 37, 45.)  Indeed, the EEO investigation report specifically references disputes with Ms. Sanders over leave being approved and being marked as absent without leave ("AWOL") when she requested leave. (Id. at 29.)  While the focus of the EEO investigation was on the alleged sexual assault and subsequent handling of that incident, it also reveals Plaintiff raised multiple and specific complaints of Ms. Sanders's handling of leave requests.  Based on the foregoing, the Court finds Plaintiff exhausted her Rehabilitation Act claim.

2. <u>Timeliness</u>

For both Title VII and Rehabilitation Act claims, the aggrieved federal employee "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Generally, when the claimant does not initiate contact within the 45-day charging period, the claim is barred for failure to exhaust

administrative remedies." <u>Shiver v. Chertoff</u>, 549 F.3d 1342, 1344 (11th Cir. 2008) (citation omitted).

As explained above, timeliness is subject to review under Rule 12(b)(6). <u>Oaxaca</u>, 641 F.2d at 391; <u>Felter</u>, 412 F. Supp. 2d at 122. Generally, when considering a Rule 12(b)(6) motion, the district court is constrained to consider the allegations within the four corners of the complaint. <u>See</u> <u>Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention</u>, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted). For a 12(b)(6) motion, a district court may "consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." <u>Hi-Tech Pharms., Inc. v. HBS Int'l Corp.</u>, 910 F.3d 1186, 1189 (11th Cir. 2018) (citation omitted). Otherwise, if "matters outside the pleadings are presented to and not excluded by the court," it "must convert the motion to dismiss into a summary judgment motion." FED. R. CIV. P. 12(d); <u>SFM Holdings, Ltd. v. Banc of Am. Sec., LLC</u>, 600 F.3d 1334, 1337 (11th Cir. 2010).

The Court finds it appropriate to consider Plaintiff's EEO investigation without converting the motion to dismiss into a motion for summary judgment.[3] First, the investigation resulting

---

[3] In response to Defendant's motion to dismiss, Plaintiff asserts several new allegations and attaches her own affidavit of the underlying events. (<u>See</u> Docs. 11, 11-1.) Plaintiff may not amend her complaint through a response to a motion to dismiss. <u>Burgess v. Religious Tech. Ctr., Inc.</u>, 600 F. App'x 657, 665 (11th Cir. 2015) (citation omitted). Thus, the Court will consider only those arguments raised in Plaintiff's response and will disregard any alleged facts not included in her Complaint.

from her meeting with the EEO counselor is expressly referenced in the Complaint. (Doc. 6, ¶¶ 12, 19.) Second, a showing that Plaintiff timely filed her charge with the EEO office is central to Plaintiff's suit. Third, the authenticity of the facts found in the investigation is not in dispute. (See Docs. 8, 11.)[4] Thus, the Court will consider the EEO investigation without converting the motion to dismiss. Hi-Tech Pharms., Inc., 910 F.3d at 1189; SFM Holdings, 600 F. 3d at 1337.

Defendant argues none of Plaintiff's claims were timely raised to the EEO office. (Doc. 8, at 7-13.) Plaintiff contends her claims are timely and any failure to bring them within the required 45-day period should be subject to equitable tolling. (Doc. 11, at 7-9.) To determine the timeliness of each of Plaintiff's claims, the Court must analyze first whether the claim was timely raised to the EEO office within 45 days of its occurrence, then second, if the claim was not raised within 45 days, whether the deadline was extended or tolled under applicable law.

In National Railroad Passenger Corp. v. Morgan, the Supreme Court clarified the timely-filing requirements and explained "whether, and under what circumstances, a Title VII plaintiff may

---

[4] While there is debate about whether the EEO counselor advised Plaintiff to wait to file a formal charge, the Court notes the dates referenced in the EEO investigation going directly to the issue of timeliness, such as when the assault occurred and when Plaintiff first spoke with an EEO counselor, are not disputed by the Parties.

file suit on events that fall outside [the timely-filing] period." 536 U.S. 101, 105 (2002). "The [Supreme] Court reached two different answers, one for each of the two types of claims at issue in the case: (1) disparate treatment and retaliation claims challenging 'discrete discriminatory or retaliatory acts,' and (2) a claim alleging a hostile work environment." Ledbetter v. Goodyear Tire & Rubber Co., 421 F.3d 1169, 1178 (11th Cir. 2005) (citing Morgan, 536 U.S. at 105). Because of these differences, the Supreme Court stressed "the need to identify with care the specific employment practice that is at issue," particularly when determining whether a plaintiff filed a timely claim under Title VII. Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 624 (2007) (citing Morgan, 536 U.S. at 110-11). Since both types of claims are present, the Court outlines the timeliness standards for both.

First, when considering timeliness of disparate treatment claims, for each discrete act forming the basis of Plaintiff's claims, the unlawful practice challenged is considered to have "'occurred' on the day that it 'happened.'" Ledbetter, 421 F.3d at 1178-79 (citing Morgan, 536 U.S. at 109) ("[O]nly those 'unlawful employment practice[s]' that are complained of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability." (second alteration in original) (citation omitted)). "[D]iscrete acts of discrimination . . .

22

each constitute[] a separate actionable unlawful employment practice." Id. at 1179 (internal quotation marks omitted) (quoting Morgan, 536 U.S. at 114). "Because each is an identifiable violation of Title VII, '[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.'" Id. (alteration in original) (quoting Morgan, 536 U.S. at 113). Based on this, "discrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." Morgan, 536 U.S. at 112. Such discrete discriminatory acts are "time barred, even when they are related to acts alleged in timely filed charges." Id. at 113. However, "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." Id. Thus, any claims based on discrete unlawful practices that occurred within 45 days of Plaintiff's EEO office contact on February 10, 2021 are timely. But any claims based on events that occurred more than 45 days prior to Plaintiff initiating contact with the EEO office are untimely and barred unless subject to an extension or tolling.

Second, when considering timeliness of a hostile work environment claim, "consideration of the entire scope of [the] claim, including behavior alleged outside the statutory time

period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." Id. at 105. As the Supreme Court explained,

> [h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.

Id. at 115 (citations omitted). "Given, therefore, that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." Id. at 118. The burden of establishing a timely filed charge of discrimination falls on the plaintiff. Jordan v. City of Montgomery, 283 F. App'x 766, 767 (11th Cir. 2008) (citing Jackson, 678 F.2d at 1010).

    a. *Equitable Tolling*

Compliance with these procedural requirements is "subject to waiver, estoppel, and equitable tolling." Zipes, 455 U.S. at 393. Plaintiff contends any failure to bring her claim within 45 days of any discrete acts alleged should be excused due to equitable tolling. (Doc. 11, at 12-14.) Because equitable tolling may be implicated in each of Plaintiff's remaining claims, the Court addresses Plaintiff's tolling argument then applies it to each claim below.

24

In the Eleventh Circuit, the plaintiff's failure to timely bring a claim can be excused in three situations: "situations in which an action was pending before a state court, situations in which the defendant had concealed facts supporting a cause of action under Title VII, and situations in which the plaintiff was misl[e]d by the defendant about the nature of h[er] rights under Title VII." Manning v. Carlin, 786 F.2d 1108, 1109 (11th Cir. 1986). But if none of these situations is involved, the suit may be dismissed for failure to exhaust. Id.

Courts apply equitable tolling sparingly because it is an "extraordinary remedy." Chang v. Carnival Corp., 839 F.3d 993, 996 (11th Cir. 2016) (per curiam) (citation omitted). Federal courts "have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990) (citations omitted). Indeed, "the interests of justice on which a tardy plaintiff relies do not support a plaintiff who has not file[d] her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running." Chang, 839 F.3d at 996 (first alteration in original) (internal quotation marks and citation omitted). "Equitable

25

tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond h[er] control and unavoidable even with diligence." Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006) (citation omitted).  The plaintiff bears the burden of showing circumstances exist that warrant equitable tolling.  Id. (citation omitted).

Plaintiff contends she is entitled to equitable tolling on her claims under the third prong because (1) she did not understand her responsibilities to report prior to her meeting with the EEO office; and (2) in her initial EEO meeting, the counselor failed to advise her in writing of her rights and responsibilities and misled her to believe an EEO claim was initiated on her behalf and she should refrain from filing anything further.  (Doc. 11, at 9, 15.)  Defendant contends Plaintiff is not excused from the 45-day time requirement because she had constructive notice of the EEO office deadline and her responsibilities prior to meeting with the EEO counselor.  (Doc. 8, at 9-12; Doc. 16, at 4-5.)

First, the Court finds Plaintiff had sufficient notice of EEO office procedures prior to her meeting with the EEO counselor, so an extension of the 45-day window is not warranted.  An extension of the 45-day time limit is mandated when an "individual shows that he or she was not notified of the time limits and was not otherwise aware of them."  29 C.F.R. § 1614.105(a)(2).  Plaintiff denies she understood the process to bring an EEO claim, even prior

to her meeting with the EEO counselor. (Doc. 11, at 15; Doc. 11-1, at 2.) But Plaintiff concedes she received "cursory" EEO training during her new employee orientation. (Doc. 11-1, at 2.) Defendant contends Plaintiff cannot rely on her misunderstanding of the EEO process to save her claims because she was on notice of the process. (Doc. 16, at 5.) In support of its argument, Defendant points to the VA's conspicuously placed posters at work, Plaintiff's own admission that the EEO process was covered in her new employee training, and Plaintiff's employee records showing she completed multiple training sessions on harassment and employee rights. (Doc. 8, at 9-10; Doc. 16, at 5.)

The record reflects Plaintiff had sufficient notice prior to her initial meeting with the EEO office of the timeline to bring an EEO claim. Notification is all that is required by the regulations; understanding is not. See 29 C.F.R. § 1614.105(a)(2) ("[T]he Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them . . . ."). While Plaintiff disputes her understanding of the EEO process generally, she does not dispute she received training sessions covering EEO processes or EEO posters were present in her workplace describing the EEO process. (See Doc. 11.) The Court finds Plaintiff had notice of the EEO timeliness requirements so her time for filing her claims is not subject to extension.

Second, the Court finds equitable tolling is inapplicable to any discrete acts occurring more than 45 days prior to Plaintiff's initial contact with the EEO office on February 10, 2021 but may be applicable to any discrete acts occurring within 45 days of her initial contact with the EEO office or thereafter.  Plaintiff contends she is entitled to equitable tolling based on allegedly misleading statements by her EEO counselor.  (Doc. 11, at 9, 15.)  Any claims Plaintiff delayed in bringing *after* the meeting could be attributable to confusion caused by the EEO counselor's alleged assurances that a formal claim would be initiated after the conclusion of the investigation and may be subject to equitable tolling.  However, as explained above, Plaintiff was on notice of the 45-day filing requirement before her EEO meeting.  Therefore, any allegedly misleading conduct or statements made in the EEO meeting are insufficient to support tolling of the discrete acts that occurred more than 45 days before February 10, 2021.  Indeed, Plaintiff does not argue or allege anything or anyone prevented her from reaching out to the EEO office or misled her about her rights prior to her meeting with an EEO counselor.  (See Docs. 6, 11.)  Plaintiff's conduct and delay in bringing her claims to the EEO office prior to her initial meeting were not due to extraordinary circumstances beyond her control or unavoidable even with diligence.  Arce, 434 F.3d at 1261 (citation omitted).  For these reasons, the Court finds Plaintiff is not entitled to

28

equitable tolling for any discrete acts that occurred more than 45 days prior to her first meeting with the EEO office. See id. (citation omitted). Thus, any discrete acts forming the basis of Plaintiff's claims that occurred more than 45 days prior to her initial contact with the EEO office are time barred.

b. *Timeliness of Each Remaining Claim*

As explained above, Plaintiff administratively exhausted her gender discrimination, hostile work environment, constructive discharge, and rehabilitation claims. However, Defendant contends Plaintiff failed to timely initiate contact with the EEO office for these claims. (Doc. 8, at 8-9, 12-13.) The Court now analyzes each of these claims to determine whether they were timely brought to the EEO office, and if not, whether they are subject to equitable tolling.

i. Gender Discrimination

Plaintiff bases her gender discrimination claim on all of Defendant's conduct alleged in the Complaint, but specifically on the assault and false assurances by her managers that the situation would be resolved on her behalf. (Doc. 6, ¶ 23.) Unfortunately, neither Party provides a clear timeline of the events. Plaintiff provides no dates or timelines for any of the alleged incidents in her Complaint. (See id.) Defendant provides several supporting documents from the EEO investigation of Plaintiff's claim, which provide at least some dates. (See Doc. 8-1.) From these

documents, the Court can glean: (1) the alleged sexual assault occurred on January 29, 2020; (2) Plaintiff reported the incident to her lead on January 30, 2020; (3) the offending employee sent Plaintiff messages on Facebook on January 30 and 31, 2020; (4) Plaintiff sent a text message to another lead a couple days after the assault; (5) Plaintiff sent an email to the acting chief on May 26, 2020 to report intimidation and bullying; (6) Plaintiff mentioned the assault in a meeting with Tanyetta Miranda on February 10, 2021 which led to implementation of no-contact orders on February 11, 2021; (7) after the no-contact orders were in place, the offending employee was allowed to change to the same location and shift as Plaintiff; and (8) in response to Plaintiff's complaints about the offending employee being transferred, a manager told her there was nothing that could be done because "it's your word against his." (Doc. 8-1, at 5, 12-13, 27-28, 32-35, 37, 52; Doc. 6, ¶¶ 8-12.)

It is Plaintiff's burden to show she timely filed each of her claims with the EEO office, and, as to her gender discrimination claim, the Court finds she has not carried her burden for some of the discrete acts underlying her claim. _Jordan_, 283 F. App'x at 767 (citing _Jackson_, 678 F.2d at 1010). Plaintiff first met with and reported her claims to the VA's EEO office on February 10, 2021. (Doc. 8-1, at 4.) Much of Defendant's alleged conduct, including the assault, Facebook stalking, and several of the

reports to management that resulted in "false assurances of action," occurred more than 45 days prior to the February 10, 2021 meeting. (Doc. 8-1, at 5, 12-13, 37, 52; Doc. 6, ¶¶ 8-12.) These discrete acts are therefore time barred, and Plaintiff may not rely on them in support of her gender discrimination claim. Morgan, 536 U.S. at 112-13.

The record shows the only discrete acts raised in the applicable time frame were Plaintiff's meeting on February 10, 2021 with Ms. Miranda, who immediately put her in contact with the EEO office; her meeting with the EEO office on February 10, 2021; and her complaints and management's responses after the offending employee's violation of the no-contact orders, which were put in place on February 11, 2021. (Doc. 8-1, at 28, 32-35; Doc. 6, ¶ 10.) The Court finds these discrete acts are not time barred, and thus Plaintiff's gender discrimination claim may proceed to the extent it is based on these acts. Morgan, 536 U.S. at 112-13.

### ii. Hostile Work Environment

Plaintiff's hostile work environment claim is based generally on "Defendant's conduct as alleged" throughout her Complaint. (Doc. 6, ¶¶ 24-25.) Again, Defendant contends Plaintiff failed to timely initiate contact with the EEO office and thus did not exhaust this claim, and Plaintiff contends her claim is timely and if not should be subject to equitable tolling. (Doc. 8, at 8, 12;

Doc. 11, at 7-9.)  As explained above, timeliness for a hostile work environment claim is treated differently than other disparate treatment claims.  Morgan, 536 U.S. at 105.  For Plaintiff's hostile work environment claim, she only needs to show "an act contributing to that hostile environment t[ook] place within the statutory time period."  Id.  Plaintiff's February 10, 2021 meeting with Ms. Miranda, who immediately put her in contact with the EEO office, and her complaints after the offending employee's violation of the February 11, 2021 no-contact orders, both fall within 45 days of her February 10, 2021 EEO office meeting.  (Doc. 8-1, at 27-28, 32-35, 37; Doc. 6, ¶¶ 10, 12.)  Therefore, the Court finds Plaintiff's hostile work environment claim is timely.

### iii. Constructive Discharge

Again, Defendant argues Plaintiff failed to timely file her constructive discharge claim, and thus did not exhaust this claim, and Plaintiff contends her claim is timely or should be subject to equitable tolling.  (Doc. 8, at 8, 12; Doc. 11, at 7-9.)  After Plaintiff spoke with EEO counselors and the investigation commenced, Plaintiff was constructively discharged from employment at the VA.  (Doc. 6, ¶¶ 13-14.)  Plaintiff alleges she contacted the EEO office at that time and sought to add constructive discharge to what she believed was her ongoing EEO claim.  (Id. ¶ 14.)  No evidence of Plaintiff's constructive discharge claim is present in the EEO investigation.  (See Doc. 8-1.)  Nevertheless,

the Court finds Plaintiff's constructive discharge claim is timely.

Plaintiff's claim for constructive discharge arose after her initial contact with the EEO office. (Doc. 6, ¶ 29.) Plaintiff alleges she filed, or at least attempted in good faith to file, her constructive discharge claim within the applicable 45-day statutory period, but she never received a response from the EEO office. (Id. ¶¶ 13-15, 29.) Based on these allegations, the Court finds Plaintiff timely raised her constructive discharge claim, even without considering equitable tolling. Furthermore, based on the Court's analysis above, any failure to raise this claim may be subject to equitable tolling as it occurred *after* the allegedly misleading statement regarding filing of a formal EEO complaint by an EEO counselor. The application of tolling to Plaintiff's constructive discharge claim is further bolstered by her allegation that her claim is based, in part, on the lack of action by the EEO office in response to her complaints. (Id. ¶ 29.) For these reasons, the Court finds Plaintiff's constructive discharge claim is timely.

### iv. Rehabilitation Act

Finally, Defendants contend Plaintiff's claims raised under the Rehabilitation Act were not timely raised to the EEO. (Doc. 8, at 13.) Plaintiff argues she brought this claim to the attention of the EEO office, not that she brought this claim timely

33

to the attention of the EEO.  (Doc. 11, at 18.)  Plaintiff alleges she was "denied reasonable requests for leave secondary to legitimate health issues she presented to her management," but like the rest of her Complaint, provides no dates or approximations of when leave was requested and denied.  (Doc. 6, ¶ 30.)  The EEO investigation reflects Plaintiff had issues with leave, but all the dates requesting and disputing leave were in late 2020, well outside of the 45-day statutory period.  (Doc. 8-1, at 6, 12, 18, 29, 37, 45.)  There are no allegations, or even arguments, that Plaintiff requested and was denied leave after the dates outlined in the EEO investigation.  (See Docs. 6, 11.)  Thus, the Court finds Plaintiff failed to timely raise her claims under the Rehabilitation Act and such claims are barred.

Turning to whether equitable tolling is applicable, since there are no allegations or arguments from Plaintiff that she sought and was denied leave within 45 days of her contact with the EEO office or anytime thereafter, she has not carried her burden to show equitable tolling should apply.  Arce, 434 F.3d at 1261 (citation omitted).  For these reasons, Defendant's motion to dismiss (Doc. 8) is **GRANTED** as to Plaintiff's Rehabilitation Act claim.

**B. Motion to Dismiss**

Next, Defendant moves to dismiss all of Plaintiff's claims for failure to state a claim under Rule 12(b)(6).  (Doc. 8, at 14-

22.)  Plaintiff argues she sufficiently alleged her claims.  (Doc. 11, at 18-22.)   The Court analyzes the sufficiency of Plaintiff's remaining claims - gender discrimination, hostile work environment, and constructive discharge.  (Doc. 6, ¶¶ 22-25, 28-29.)   As outlined above, the Court is constrained to the allegations within the four corners of the complaint, but the Court may consider Plaintiff's EEO investigation without converting the motion into a motion for summary judgment.  Speaker, 623 F.3d at 1379; Hi-Tech Pharms., Inc., 910 F.3d at 1189; SFM Holdings, 600 F. 3d at 1337.

### 1. Gender Discrimination and Hostile Work Environment Claims

Preliminarily, Defendant contends Plaintiff's gender discrimination and hostile work environment claims are "improperly duplicated into two separate counts." (Doc. 8, at 14.)  Plaintiff recognizes Defendant's argument, and she does not argue or in any way contend the claims are distinct.  (Doc. 11, at 15.)  Instead, Plaintiff treats them as one claim in her opposition.  (Id. at 18-20.)  It does not appear Plaintiff brought two distinct claims. Both of Plaintiff's claims are predicated on all of Defendant's conduct and her arguments pertaining thereto focus specifically on the harassment she endured from the offending employee and that the harassment was "condoned and enabled, or certainly not thwarted, by management." (See Doc. 6, ¶¶ 22-25; Doc. 11, at 20.) Furthermore, Plaintiff's arguments focus heavily on whether the

harassment was "severe and pervasive," an element of hostile work environment claims but not of general gender discrimination claims. (Doc. 11, at 18-20); see Copeland v. Ga. Dep't of Corr., 97 F.4th 766, 774 (11th Cir. 2024); Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43, 843 n.3 (11th Cir. 2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Indeed, Plaintiff's arguments cite only to the factors of a hostile work environment claim. (Doc. 11, at 19.) Therefore, the Court finds Plaintiff's gender discrimination claim and hostile work environment claim are one claim for hostile work environment and will analyze it as such. To the extent Plaintiff originally tried to file two separate claims, her gender discrimination claim is **DISMISSED** for failure to state a claim.

There are five elements of a hostile work environment claim: "(1) [the plaintiff] belongs to a protected group; (2) [s]he was subject to unwelcome harassment; (3) the harassment was based on a protected characteristic; (4) the harassment was sufficiently severe or pervasive to alter the conditions of h[er] employment; and (5) h[er] employer was responsible for the hostile work environment." Copeland, 97 F.4th at 774 (internal quotation marks and citation omitted). Defendant specifically challenges Plaintiff's allegations as to the fourth element — arguing Plaintiff failed to sufficiently allege severe or pervasive harassment that altered the terms and conditions of her employment.

(Doc. 8, at 15-18.)  Plaintiff contends she alleged enough to show she faced severe and pervasive harassment at work, including being forced to change shifts, change locations, enter and exit out of the back of the building, and facing ongoing harassment from the offending employee.  (Doc. 11, at 18; Doc. 6, ¶ 27.)  She also points to management's repeated failures to address her complaints, specifically management's failure to enforce the no-contact orders put in place between her and the offending employee, which was allegedly accompanied by the statement "it's your word against his."  (Doc. 6, ¶¶ 1, 9-12, 27; Doc. 11, at 18.)

"The severe-or-pervasive element ensures that a hostile work environment claim remains faithful to the text of Title VII." Copeland, 97 F.4th at 775.  Only a work environment alleged to be sufficiently inundated by "intimidation, ridicule, and insult . . . to alter the conditions of the victim's employment" is actionable.  Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  To be sufficiently severe and pervasive, a plaintiff is not required to suffer a "'serious effect on [her] psychological well-being' nor even a 'tangible effect[]' on h[er] job performance before suing." Id. (second alteration in original) (quoting Harris, 510 U.S. at 20, 22)).  However, a hostile work environment claim under Title VII does not operate as a "civility code for the American workplace." Oncale, 523 U.S. at 80. Instead, it charts "a middle path between making actionable any

conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." Harris, 510 U.S. at 21.

To establish the severe and pervasive element, the employee must allege both a subjective and objective component. Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (quoting Harris, 510 U.S. at 21-22). First, the employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment. Id. Plaintiff alleges the continued degeneration of her employment forced her to leave her employment, despite the fact she planned to make her position a career. (Doc. 6, ¶¶ 6, 13.) Thus, the Court finds Plaintiff sufficiently alleged she subjectively perceived the harassment as sufficiently severe and pervasive to alter her terms and conditions of employment. Second, the conduct must also be objectively severe and pervasive enough to alter the terms and conditions of employment, considering all the circumstances. Mendoza, 195 F.3d at 1246. For the objective component, the Court must consider whether the environment was one a reasonable person in the plaintiff's position would find hostile or abusive under the circumstances. Id. Under the objective inquiry, courts consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4)

whether the conduct unreasonably interferes with the employee's job performance." Id. (citation omitted).

First, as to the frequency factor, Plaintiff alleges despite her continued effort to work with and beg her supervisors to address the harassment from the offending employee, there was "ongoing lack of support and safety . . . from management" and "ongoing harassment" following the alleged assault. (Doc. 6, ¶¶ 11-12, 30.) Second, with respect to severity, Plaintiff alleges Defendant's official harassed her by allowing her to be sexually assaulted by a fellow employee, allowing and enabling the offending employee to harass and stalk her after the assault, and providing no support or guidance in the face of such harassment. (Id. ¶ 1.) More specifically, Plaintiff alleges after finally being reassigned to a different shift and location than the offending employee and after signing a no-contact order, the offending employee was allowed to change to the same location and shift as her. (Id. ¶ 10.) In response to the offending employee being transferred and violating the no-contact orders, Plaintiff was told by a manager there was nothing that could be done because "it's your word against his." (Id. ¶ 12.) As to the third factor, Plaintiff alleges the offending employee "walked behind her and rubbed against her in a sexual fashion." (Id. ¶ 8.) These allegations show the alleged harassing conduct was more than physically threatening; it escalated to actual physical contact.

Finally, as to the fourth factor, the Complaint includes examples of how the alleged harassment changed the terms and conditions of Plaintiff's employment: she was forced to change workstations and shifts and had to leave work through alternate means. (Id. ¶ 27.)

Plaintiff's allegations are thin and create a close call as to whether Plaintiff carried her burden under Rule 12(b)(6). Nevertheless, taking Plaintiff's allegations as true, the Court concludes it is plausible the alleged harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment such that a reasonable person would find the environment hostile and abusive. Mendoza, 195 F.3d at 1246. The cases Defendant relies on to argue Plaintiff's allegations are insufficient to state a claim are distinguishable for two reasons. (Doc. 8, at 16-17.) First, the cited cases affirm grants of summary judgment, which is subject to a different standard than a motion to dismiss. See, e.g., Mendoza, 195 F.3d at 1247; Williams v. Hous. Auth. of Savannah, Inc., 834 F. App'x 482, 491 (11th Cir. 2020; Byrd v. Postmaster Gen., 582 F. App'x 787, 793 (11th Cir. 2014); Henderson v. Waffle House, Inc., 238 F. App'x 499, 502 (11th Cir. 2007); Mitchell v. Pope, 189 F. App'x 911, 913, 913 n.3 (11th Cir. 2006). As stated, Plaintiff's allegations are thin, but, based on the less severe standard applied to a motion to dismiss, Plaintiff made a plausible claim for hostile work environment.

Second, in comparing Plaintiff's allegations to the cited cases, Defendant simplifies her allegations to a single act of sexual conduct but ignores Plaintiff's contentions that her complaints and requests for help were ignored, or completely disregarded, by management and that management's conduct allowed and enabled the offending employee to continue harassing her. (Doc. 8, at 17–18; Doc. 6, ¶¶ 1, 9–11, 27; Doc. 11, at 20.) Overall, Plaintiff alleged sufficient facts to support a plausible claim for hostile work environment.  Therefore, Defendant's motion to dismiss Plaintiff's hostile work environment claim is **DENIED**.

## 2. Constructive Discharge

Plaintiff asserts a claim for constructive discharge based on her allegations that the "conditions of [her] employment degenerated enough that she was forced to leave her employment" because of "the lack of action" in response to her complaint "by her managers and the EEO [office]." (Doc. 6, ¶¶ 13–14, 29.) Defendant contends Plaintiff's allegations provide no basis for a constructive discharge claim because they are too vague or based on conduct that is too remote to rise to the level of constructive discharge. (Doc. 8, at 20–21.)  Plaintiff argues the offending employee's continuous contact with her even after the no-contact orders were in place and management's continued failures to do anything about it, including allegedly commenting there was no enforcement of the no-contact orders because "it's your word

41

against his," is sufficient to allege a constructive discharge claim. (Doc. 11, at 21.)

To establish a constructive discharge claim, Plaintiff must "demonstrate that the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." <u>Virgo v. Riviera Beach Assocs., Ltd.</u>, 30 F.3d 1350, 1363 (11th Cir. 1994) (citations omitted). The threshold is "quite high." <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1231 (11th Cir. 2001). An employer's conduct must be severe or pervasive, but "[t]he standard for proving constructive discharge is higher than the standard for proving a hostile work environment." <u>Id.</u> (citations omitted). Indeed, "employee resignations are presumed to be voluntary." <u>Hargray v. City of Hallandale</u>, 57 F.3d 1560, 1568 (11th Cir. 1995) (citations omitted) (noting that "presumption will prevail unless the employee comes forward with sufficient evidence to establish that the resignation was involuntarily extracted" (alterations adopted) (citation omitted)). A plaintiff must show "the work environment and conditions of employment were so unbearable that a reasonable person in that person's position would be compelled to resign." <u>Virgo</u>, 30 F.3d at 1363 (citations omitted). Furthermore, "[i]n determining whether a reasonable person would be compelled to resign, courts consider the amount of time between the objectionable acts and the constructive discharge, with a

42

longer gap cutting against reasonableness." Moore v. San Carlos Park Fire Prot. & Rescue, 808 F. App'x 789, 798 (11th Cir. 2020) (citing Spence v. Maryland Casualty Co., 995 F.2d 1147 (2nd Cir.1993); Steele v. Offshore Shipbuilding, Inc., 867 F.2d 1311 (11th Cir.1989)).

Plaintiff has not pled facts sufficient to support a claim for constructive discharge. As explained above in analyzing Plaintiff's other claims, the allegations in her complaint do not reference specific dates or circumstances in which the allegedly discriminatory acts occurred. (See Doc. 6.) Plaintiff claims she was constructively discharged when she resigned but does not state the date of her resignation. (Id. ¶¶ 13-14, 29.) Plaintiff alleges that she was assaulted and Facebook stalked by the offending employee, but from the EEO investigation the Court knows these instances occurred in January 2020, at least two years prior to her resignation. (Id. ¶¶ 8, 10; Doc. 8-1, at 5, 12-13, 53-54.) She also alleges general lack of support by management, one specific comment by management, and violation of a no-contact order, without mentioning perpetrators or dates when these acts occurred. (Doc. 6, ¶¶ 13-14, 29.) Plaintiff has not alleged any of these actions occurred close in time to her resignation. (See id.) While the Court must construe the facts in Plaintiff's favor at the motion to dismiss stage, a complaint is insufficient when it tenders "'naked assertions' devoid of 'further factual

enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Here, Plaintiff hardly alleges details of any behavior at all, providing no specific dates or names any offending employees, and instead makes broad, unspecified claims. Without specific allegations with dates of alleged discriminatory conduct and Plaintiff's date of resignation, the Court cannot determine whether a "reasonable person in [her] position would be compelled to resign" and Plaintiff's allegations are insufficient to overcome the presumption her resignation was voluntary. Hargray, 57 F.3d at 1568; Virgo, 30 F.3d at 1363. For these reasons, the Court finds Plaintiff's meager allegations do not meet the higher standard of plausibly alleging constructive discharge, even at the less severe standard applied to a motion to dismiss. Moore, 808 F. App'x at 798 (11th Cir. 2020) (affirming dismissal of a constructive discharge claim when the plaintiff had at least a three-month gap between her latest demotion and resignation and there was no way of determining from her allegations when other discriminatory acts occurred); Simmons v. Oaks Senior Living, LLC, No. CV422-274, 2024 WL 248510 (S.D. Ga. Jan. 23, 2024) (dismissing a constructive discharge claim where the complaint did not contain enough factual matter to sufficiently show a reasonable person in the plaintiff's position would be compelled to resign). Therefore, Defendant's motion to dismiss is **GRANTED** as to Plaintiff's constructive discharge claim.

IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 8) is **GRANTED IN PART AND DENIED IN PART.** Based on the foregoing, Plaintiff's claims for reprisal, gender discrimination, constructive discharge, and violation of the Rehabilitation Act are **DISMISSED.** Plaintiff's other claim may proceed as set out in this Order.

**ORDER ENTERED** at Augusta, Georgia, this 22nd day of July, 2024.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA