IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GLORIA COLLINS,

    Plaintiff,

v.

DOUG COLLINS, Secretary of
Veterans Affairs,

    Defendant.

CV 123-092

# ORDER

Before the Court is Defendant Doug Collins's motion for summary judgment (Doc. 38).[1]  For the following reasons, Defendant's motion for summary judgment is **GRANTED**.

### I. BACKGROUND

Plaintiff Collins is a former employee of the Charlie Norwood Veterans Affairs Medical Center ("CNVAMC") in Augusta, Georgia. (Doc. 45-14, at 1.)  Plaintiff brought a hostile work environment claim based on sexual harassment pursuant to Title VII of the Civil Rights Act of 1964.  (Doc. 6, at 8.)  On January 29, 2020, Gloria Collins was working at CNVAMC when another employee, Dexter Moore,

---

[1] On June 30, 2025, Plaintiff moved for oral argument on Defendant's Motion to Dismiss (Doc. 50), and on July 1, 2025, Defendant responded in opposition (Doc. 51).  Because the motion for summary judgment was thoroughly briefed, the Court finds no need to conduct a hearing on the matter.  As such, Plaintiff's motion for oral argument (Doc. 50) is **DENIED**.

sexually assaulted her by approaching her from behind and rubbing his genitals across her while they were both clothed. (Doc. 45-14, at 2-3.) The following day, Moore messaged Collins on Facebook twice and called her at work. (Id. at 4.)

At the time, Collins' supervisor, Debra Sanders, was "unpleasant" to Collins and sometimes refused to speak with her. (Doc. 45-14, at 2.) She instead "required Collins to speak through her lead." (Id. at 3.) Collins initially reported the assault to "some co-workers," "her lead," "and [her lead's] assistant the next day" but never reported it to Sanders. (Doc. 45-14, at 3.) In February 2021, Collins was assigned to a new supervisor, Tanyetta Miranda. (Doc. 45-14, at 4.) On February 10, 2021, Plaintiff reported Moore's assault to Miranda. (Id.) Miranda reported the assault to leadership and the Equal Employment Office ("EEO"), and the CNVAMC imposed no-contact orders prohibiting Plaintiff and Moore from contacting or communicating with one another. (Id. at 5.) Miranda transferred Plaintiff to work a different assignment from Moore. (Id. at 4.) The EEO manager initiated a fact-finding investigation, determined the assault "had likely occurred," recommended that Moore attend harassment prevention training and that he not be scheduled with Plaintiff. (Doc. 45-14, at 5.)

After Plaintiff reported the assault, Moore increasingly intermingled with Plaintiff. (Id. at 6-7; Doc. 45-10, at 26.) On

2

the day Plaintiff signed the no-contact order and started in the new department, Moore moved his car next to Plaintiff's car in the parking lot. (Doc. 45-10, at 25.) Following Plaintiff's complaint and the no-contact orders, Moore attempted to work in the same department and during the same shifts as Plaintiff. (Id. at 23-25.) On two occasions, Moore was in the area that Plaintiff reported for work when she arrived. (Doc. 45-14, at 6.) Moore immediately left after she arrived on the first occasion, but on the second occasion, Moore only left after Plaintiff reported him to her supervisor, who then instructed Moore to leave. (Id.) Moore's shift often started or ended around the time Plaintiff started or ended her shift, and he "would be propped up against his car waiting . . . and would just watch [Plaintiff]." (Doc. 45-10, at 26.) Lastly, Moore cornered and hugged Plaintiff in an elevator even though she said, "don't touch me." (Id. at 28.) Each of these instances occurred after the no-contact orders were implemented. (Id. at 25.) However, the record reflects that of the incidents that occurred after the no-contact order, Plaintiff only reported the elevator incident and the second interaction during her shift to the EEO manager. (Id. at 24-25, 28.)

On July 20, 2021, Plaintiff resigned from the CNVAMC "due to health issues." (Doc. 38-8, at 1.) On July 21, 2021, Plaintiff emailed the EEO manager to "change my EEO claim to include constructive discharge." (Doc. 45-2, at 1.) On July 27, 2021,

3

Plaintiff's EEO manager emailed her instructions for filing a formal charge of discrimination. (Doc. 45-14, at 7.) However, Plaintiff never received the investigative report or any communication from the EEO office regarding her claim after her employment ended. (Id. at 8.) The EEO manager concluded the investigation in July 2021 without communicating her findings to Plaintiff. (Doc. 45-1, at 1-6.) Plaintiff did not file a separate complaint with the Equal Employment Opportunity Commission ("EEOC") apart from the investigation her EEO manager conducted and never received a right-to-sue notice. (Doc. 45-14, at 7-8.)

On March 31, 2025, Defendant moved for summary judgment on the sex-based hostile work environment claim. (Doc. 38.) On May 19, 2025, Plaintiff responded in opposition. (Doc. 45.) On June 16, 2025, Defendant replied in support. (Doc. 49.) Defendant's motion is therefore ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could "affect the outcome of the suit under the governing [substantive] law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and a dispute is genuine "if the non[-]moving party has produced evidence such that a reasonable factfinder could

4

return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must "draw all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (citation, internal quotation marks, and internal punctuation omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials in the record, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the non-movant bears the burden of proof at trial, the movant has two options as to how it can carry its initial burden. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993). The movant may show an absence of evidence to support the nonmovant's case or provide affirmative evidence demonstrating the nonmovant's inability to prove its case at trial. Id.

If the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Vaughn v. Ret. Sys. Of Ala., 856 F. App'x 787, 789 (11th Cir. 2021) (citation omitted). The non-movant must tailor its response to the method by which the movant

carries its initial burden. <u>Fitzpatrick</u>, 2 F.3d at 1116-17. For example, if the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." <u>Id.</u> at 1116. On the other hand, if the movant shows a lack of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1116-17 (citations omitted). The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court provided Plaintiff notice of the motion for summary judgment, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 39.) For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985), have been satisfied. The time for filing materials in opposition has expired, the issues have been thoroughly briefed, and the motion is ripe for consideration.

### III. DISCUSSION

The Court addresses the Parties' arguments below.

### A. Title VII Statutory Requirements

At the outset, the Parties dispute whether Plaintiff satisfied the Title VII statutory requirements of filing a complaint with the EEOC. (Doc. 38, at 6-7; Doc. 45, at 9-12; Doc. 49, at 2-4.) To pursue a Title VII action in federal court, a plaintiff must file her complaint within ninety days of her receipt of a "right to sue" letter from the EEOC. See, e.g., Green v. Union Foundry Co., 281 F.3d 1229, 1233-34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e-5(f)(1)); see also Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000) ("Title VII . . . actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge."). "Once the defendant contests this issue, the plaintiff has the burden of establishing that he met the ninety-day filing requirement." Green, 281 F.3d at 1234 (citation omitted).

In the Court's July 22, 2024 Order, the Court addressed Defendant's argument that failure to exhaust administrative remedies by not raising an EEOC complaint can affect the Court's jurisdiction. (Doc. 23, at 6-19.) The Court found Plaintiff administratively exhausted her hostile work environment claim because she made a good faith effort to comply with the regulations

7

to present and pursue her claim with the EEO manager and timely filed the claim. (Id. at 10, 13-14, 31-32.)² However, the Court did not address, and Defendant did not previously raise, the statutory requirements for filing a Title VII claim within ninety days of receiving a right-to-sue notice.

Defendant now argues Plaintiff's claim should be dismissed because Plaintiff never filed an EEOC complaint or received notice of the right-to-sue. (Doc. 38, at 6.) Defendant asserts Plaintiff must follow the requirement of filing a complaint within ninety days of receiving the EEOC's right-to-sue notice. (Id.) Although Plaintiff met with the EEO manager on multiple occasions about her complaint, Plaintiff presents no evidence that she, or her EEO manager, filed her EEOC complaint for hostile work environment. (Doc. 45, at 9-11.) Further, it is undisputed Plaintiff never received a right-to-sue notice from the EEOC. (Doc. 45-14, at 8.) Thus, the Court finds Plaintiff failed to satisfy the ninety-day filing requirement because she never filed a complaint with the EEOC or received a right-to-sue notice. Green, 281 F.3d at 1234 (granting summary judgement to defendant where plaintiff failed to show he timely filed the complaint because he was unable to present evidence of the date of receipt of a right-to-sue notice).

---

² Plaintiff references these findings in her response, though Defendant only raises the right-to-sue notice requirement. (Doc. 38, at 6-7; Doc. 45, at 9-11.)

8

Nonetheless, Plaintiff argues the ninety-day filing requirement should be equitably tolled. (Doc. 45, at 11.) Because Title VII's timely-filing requirements are not jurisdictional, the ninety-day limitations period is subject to equitable tolling, but courts should grant equitable tolling "only sparingly." Stamper v. Duval Cnty. Sch. Bd., 863 F.3d 1336, 1342 (11th Cir. 2017); Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990). Thus, equitable tolling is appropriate when a party "untimely files because of extraordinary circumstances that are both beyond [her] control and unavoidable even with diligence," and the party "bears the burden of proving that equitable tolling of the limitations period is appropriate." Stamper, 863 F.3d at 1342 (citation omitted).

Plaintiff argues "the grounds for equitable tolling [have] been satisfied" but fails to define the grounds or specifically allege a reason for equitable tolling. (Doc. 45, at 12.) The record reflects that following the EEO investigation, the EEO manager emailed Plaintiff instructions to file an EEOC discrimination claim but never informed Plaintiff that she did not have an ongoing EEO complaint for hostile work environment through her EEO manager. (Doc. 45-14, at 7-8.) Plaintiff also fails to argue these events were extraordinary circumstances and lacks case law to support her argument for equitable tolling under these facts. See Moore v. Georgia Dep't of Corr., No. 4:13-CV-228, 2014

WL 4776714, at *4 (S.D. Ga. Sept. 15, 2014) (granting summary judgment to defendant where plaintiff did not present any evidence to counter that her Title VII claims are untimely or show extraordinary circumstances warrant equitable tolling on those claims).

Because Plaintiff failed to comply with the statutory ninety-day filing requirement, and Plaintiff never received a right to sue letter from the EEOC, Defendant's motion for summary judgment (Doc. 38) is **GRANTED**.

## B. Prime Facie Hostile Work Environment Claim

Out of an abundance of caution, the Court addresses Defendant's additional arguments as to Plaintiff's prima facie claim of hostile work environment. Title VII bans "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (citation omitted). "[T]he very fact that . . . discriminatory conduct [i]s so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII[ ]. . . ." Id. at 22. A plaintiff must prove five elements:

> (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic . . . such as [sex]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5)

10

>  that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (citation omitted). The Parties do not dispute Plaintiff belongs to a protected group, was subject to unwelcome harassment, and the harassment was based on sex. (Doc. 38, at 8; Doc. 45, at 8.) This claim therefore hinges upon the fourth and fifth elements: whether the harassment was sufficiently severe or pervasive and whether Defendant is liable for the harassment.

The severe and pervasive requirement involves a subjective and an objective component. Adams v. Austal, U.S.A., L.C.C., 754 F.3d 1240, 1249 (11th Cir. 2014). "The employee must subjectively perceive the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment, and this subjective perception must be objectively reasonable." Mendoza v. Borden, Inc., 195 F.3d 1238, 1246 (11th Cir. 1999) (citation and quotation marks omitted). Plaintiff puts forth evidence that the assault by her co-worker, followed by stalking and harassment, was "shocking," "humiliating," and "forced [her] to leave her work". (Doc. 45, at 14-15.) Thus, the Court finds Plaintiff subjectively perceived the harassment as sufficiently severe and pervasive to alter the terms and conditions of employment.

To determine if harassment is objectively severe, courts "examine the conduct in context, not as isolated acts, and

11

determine under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment." Adams, 754 F.3d at 1250 (citation omitted). Courts consider four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Austin v. City of Montgomery, 196 F. App'x 747, 751 (11th Cir. 2006) (citation omitted). However, "no single factor is required." Elite Amenities, Inc. v. Julington Creek Plantation Cmty. Dev. Dist., 784 F. App'x 750, 753 (11th Cir. 2019) (citation omitted). The objective assessment must be done "from the perspective of a reasonable person in the plaintiff's position, knowing what the plaintiff knew." Adams, 754 F.3d at 1250 (citation omitted).

Construed in the light most favorable to Plaintiff, the record reveals that Moore sexually assaulted Plaintiff by approaching her from behind and rubbing his genitals against her; contacted her on Facebook twice the following day; intentionally interacted with her at least twice at work despite a no-contact order in place; hugged her in an elevator; and stalked Plaintiff at work and in the parking lot. (Doc. 45-14, at 3-7.)

12

Defendant argues "courts have determined much stronger cases lacked the necessary severity or pervasiveness." (Doc. 38, at 11.) Defendant relies on three cases where the Eleventh Circuit ruled in favor of the employer. First, in Mendoza, the plaintiff's supervisor constantly followed her and once rubbed his hip against hers while touching her shoulders. (Id. at 11-12 (citing 195 F.3d at 1243).) Second, Defendant relies on Michell v. Pope, where the plaintiff alleged sixteen instances of offensive conduct by her supervisor including attempting to kiss her, lifting her over his head, and rubbing against her and reaching over her chest. (Id. at 12 (citing 189 F. App'x 911, 913 (11th Cir. 2006)).) Third, Defendant cites Stancombe v. New Process Steel LP, where a plaintiff's coworker hugged plaintiff and touched his buttocks three times and, on another occasion, grabbed plaintiff's head and made three pelvic thrusts in his face. (Id. (citing 652 F. App'x 729, 734-35 (11th Cir. 2016)).) In response, Plaintiff does not compare the facts to case law or analyze the factors above.

The Court now turns to the factors above. Viewing the evidence in context, Moore's conduct was relatively infrequent because, except for the sexual assault on January 29, 2020, the three interactions between Plaintiff and Moore encounter occurred during a six-month period between February 10, 2021 (when Plaintiff reported the assault to her supervisor) and July 20, 2021 (when Plaintiff ended employment). (Doc. 45-14, at 2-8.) During this

13

period, Moore waited for Plaintiff in the parking lot between shifts and watched her, but Plaintiff neither states that they ever spoke or made contact nor the frequency of these encounters. (Id. at 10; Doc. 45-10, at 26.); see Comerinsky v. Augusta Coating & Mfg., LLC, 418 F.Supp. 3d 1252, 1261-62 (S.D. Ga. 2019) (finding the frequency of defendant's harassment severe and pervasive where such verbal and occasional physical abuse occurred "on a daily basis"). In conjunction with the infrequency of the conduct, Moore's conduct was less severe than Mendoza, Mitchell, and Stancombe because Moore's contact with Plaintiff was not as invasive or consistent as attempting to kiss Plaintiff, touching her buttocks three times, or constantly following her. Mendoza, 195 F.3d at 1243; Michell, 189 F. App'x at 913; Stancombe, 652 F. App'x at 734-35. Under the third factor, the sexual assault and subsequent unrequited hug in the elevator could both be physically threatening to a reasonable person in the same position as Plaintiff. (Doc. 45-14, at 7.) However, under the fourth factor, Plaintiff states she had to enter and exit work through the back door and changed departments following the sexual assault, but she fails to present sufficient evidence that her job performance changed. (Id. at 4; Doc. 45-10, at 15.); but see Comerinsky, 418 F. Supp. 3d at 1262 (finding plaintiff's terms and conditions of employment changed where defendant forced her to work through lunch breaks off the clock, run personal errands for him, and perform

14

tasks against medical advice). Thus, there is insufficient evidence that Moore's conduct unreasonably interfered with Plaintiff's job performance under the totality of the circumstances. In short, while Plaintiff may have subjectively perceived the complained-of conduct as severe and pervasive harassment to alter the terms or conditions of employment, the Court finds there is no genuine issue of material fact as to whether it was objectively so.

The Court now turns to the final element for a prima facie claim – that the employer is responsible for such environment under either a theory of vicarious or of direct liability. Miller, 277 F.3d at 1278. The plaintiff must therefore show either "actual knowledge on the part of the employer or conduct sufficiently severe and pervasive as to constitute constructive knowledge to the employer." Id.

Defendant argues because Plaintiff did not inform the CNVAMC of Moore's assault when it happened, "the relevant timeframe for consideration is February 10, 2021 (when she reported the assault to Miranda) to July 20, 2021 (when she resigned)." (Doc. 38, at 9; Doc. 49, at 5; Doc. 45-14, at 4, 8.) Defendant further asserts that the CNVAMC and Plaintiff's new supervisor "acted immediately, and no-contact orders were issued the next day." (Doc. 38, at 14; Doc. 45-14, at 4-5.) Defendant also points out when Moore was trying to work in the same area as Plaintiff, Moore was forced to

leave that area. (Doc. 38, at 14; Doc. 45-14, at 6.) Lastly, Defendant states Plaintiff did not otherwise complain to her supervisors about Moore's stalking behavior in the parking lots or in the elevator. (Doc. 38, at 14; Doc. 45-10, at 26-27.) Because the CNVAMC was unaware of these incidents at the time, Defendant argues it could not stop them. (Doc. 38, at 14.)

Plaintiff responds that "liability of the VA has been established" because "the multiple incidences of harassment reveal the agency was negligent in controlling working conditions." (Doc. 45, at 17 (citation omitted).) While Plaintiff details the instances of harassment in her response, Defendant argues she fails to assert how CNVAMC had actual knowledge of these incidents except for the sexual assault and the second occasion that Moore was trying to work in the same area as Plaintiff. (Doc. 49, at 7-8.)

Since CNVAMC had actual knowledge of two instances of harassment, its liability turns on whether it took "prompt remedial action." Miller, 277 F.3d at 1278. A "remedial action must be reasonably likely to prevent the misconduct from recurring." Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996) (internal quotations omitted). First, once Plaintiff reported the sexual assault to Miranda, Miranda reported it to CNVAMC leadership, who took prompt remedial action by investigating the assault and issuing the no-contact orders to Plaintiff and Moore. (Doc. 45-14, at 4-5.) Although Moore

continued harassing Plaintiff after the no-contact orders were implemented, the CNVAMC was only aware of one instance where Moore intentionally contacted Plaintiff by visiting her work area, and the CNVAMC immediately forced Moore to leave. (Id. at 8.) On the other instance that Moore visited Plaintiff's work area, Moore left voluntarily, so Plaintiff did not inform CNVAMC at that time about the violation. (Doc. 45-10, at 23-24.) As for the elevator and parking lot encounters, the record supports Plaintiff did not inform CNVAMC about these instances when they occurred, so CNVAMC took no action to remedy the encounters. (Doc. 45-14, at 7.) The Court finds the CNVAMC's acts of implementing and enforcing the no-contact orders were prompt remedial measures, and any violations of the no-contact orders that CNVAMC failed to remedy were due to Plaintiff's failure to report them. Thus, the Court finds the CNVAMC took prompt remedial action after receiving notice of the two instances of harassment.

Therefore, Plaintiff fails to establish an essential element of her prima facie hostile work environment claim, and the Court need not determine Defendant's liability. Based on the foregoing, even if Plaintiff had complied with the ninety-day filing requirement and received a right to sue letter, she still failed to establish her claim. Thus, Defendant's motion for summary judgment as to the hostile work environment claim (Doc. 38) is **GRANTED**.

17

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (Doc. 38) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all pending motions and deadlines, and **CLOSE** this case. Because the Court resolved the motion for summary judgment based on the Parties' briefs, Defendant's motion for oral argument (Doc. 50) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 26th day of January, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA